**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF B.I.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.S., BIRTH FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 652 WDA 2019 |

Appeal from the Decree Entered March 29, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. A-18-106

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　　**FILED DECEMBER 23, 2019**

T.S. (Father) appeals from the decree entered in the Court of Common Pleas of Allegheny County (orphans' court) granting D.Z.'s (Mother) petition seeking the involuntary termination of Father's parental rights to the minor child, B.I.S. (Child) (born August 2012), so that S.Z. (Stepfather) can adopt Child.  We affirm.

Father and Mother were never married but they lived together for approximately one-and-one-half years after Child was born.  Father struggles with alcohol addiction and mental health issues and his relationship with Mother was abusive.  Mother evicted him from the residence in April 2014. Mother and Father shared custody of Child by informal agreement until Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

initiated an action, which resulted in a January 2016 consent order that provided for shared legal custody and primary physical custody to Mother. Father exercised visitation pursuant to that order until May 2017 when he attempted suicide. Father's last visit with Child was in October 2017.

Meanwhile, Father was convicted of three criminal offenses including two driving under the influence cases as well as one case of sexual assault. He was incarcerated from March 2018 through the end of August 2018 and then entered an inpatient alcohol treatment program.

Mother and Stepfather married in June 2018. On November 13, 2018, Mother filed a petition for involuntary termination of Father's parental rights to Child and Stepfather filed a petition for adoption. The orphans' court appointed counsel for Father and a guardian *ad litem* for Child. The court held a hearing on the petitions on February 5, 2019, and an *in camera* interview with Child the next day.

On March 29, 2019, the orphans' court entered its order terminating Father's parental rights pursuant to The Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (11), and (b).[1] It determined that Father failed to maintain

---

[1] These provisions state:

> (a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

_____

        (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

        (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

        (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (11), and (b).

With regard to section (a)(11), we note that Father is required to register as a sex offender because of his entry of a guilty plea to sexual assault charges involving his then ten-year-old niece.  (**See** Trial Court Opinion, 8/08/19, at 8, 16; Father's Brief, at 9, 14-15).

- 3 -

contact with Child for more than a year, and that his explanations for his inaction were unpersuasive. It also found that it was in the best interest of the Child that Father's parental rights be terminated. Finally, it found that termination of parental rights was appropriate because Father was required to register as a sex offender. *See* 23 Pa.C.S. § 2511(a)(11). It further directed that Child's adoption may continue without further notice to Father. Father timely appealed and he and the orphans' court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)(2)(i)-(ii).

On appeal, Father challenges the orphans' court's termination of his parental rights. He claims that the statutory grounds for termination were not met, and challenges the orphan's court's finding that termination will best serve Child's needs and welfare.[2]

## I.

In cases involving the termination of parental rights, "[w]e give great deference to the trial courts that often have first-hand observations of the parties spanning multiple hearings." *In re Adoption of K.M.G.*, 2019 WL 4392506, at *6 (Pa. Super. filed Sept. 13, 2019) (*en banc*) (citation omitted). "The trial court, as the finder of fact, is the sole determiner of the credibility

---

[2] "[O]ur standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (citation omitted).

of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact." *In re B.C.*, 36 A.3d 601, 605 (Pa. Super. 2012) (citation omitted). "Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result." *In re R.L.T.M.*, 860 A.2d 190, 191–92 (Pa. Super. 2004) (citation omitted). "In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so." *Id.* (citation and internal quotation marks omitted).

In this case, as previously mentioned, the orphans' court found that Mother met her burden of proof under 23 Pa.C.S. § 2511 (a)(1), (2), (11), and (b). It is well-settled that "we need only agree with its decision as to any one subsection of Section 2511(a) and subsection (b) in order to affirm the termination of parental rights." *In re Adoption of K.M.G.*, *supra* at *6 (citation omitted).[3] We will, therefore, focus our discussion on the court's conclusion that termination is appropriate under 23 Pa.C.S. § 2511(a)(1) and (b). We begin by noting with regard to section (a)(1) that the orphans' court

---

[3] Regarding the court's finding of statutory grounds to involuntarily terminate Father's parental rights under 23 Pa.C.S § 2511(a)(11), he argues that he was never informed of the potential loss of his parental rights by virtue of his guilty plea. This is a collateral attack on his sentence. In any event, we need not address this issue because of the manner in which we dispose of this appeal.

based its decision to terminate Father's parental rights on its finding that he has failed to perform his parental duties. (**See** Trial Ct. Op., at 14).

In order to terminate parental rights pursuant to Section 2511(a)(1), the moving party must establish "that for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "Although the six months immediately preceding the filing of the petition are the most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." **In re B.N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004) (citation omitted). Additionally, "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

"A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003) (citation omitted). Once the evidence establishes a failure to perform parental duties, the trial court must then consider: "(1) the parent's explanation for his or her

conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." **In re Z.S.W**., 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

We also note that a parent's responsibilities are not tolled during his incarceration. **See In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012). Rather, we must inquire whether the parent has used those resources at his disposal while in prison in continuing a close relationship with the child. **See id.** "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited." **Id.** (citation omitted).

## II.

### A.

In this case, Father argues that he did not refuse or fail to perform parental duties, claiming that he was continuously involved in Child's life until their final visit in October 2017. Father maintains that, despite the obstacles he faced, including his incarceration and Mother's thwarting of his attempts to exercise custodial rights, he made efforts to perform parental duties. He avers that he took parenting classes while incarcerated, obtained treatment for his addiction and mental health issues, paid child support to the extent that he was able to, and sent text messages to Mother to inquire about Child. (**See** Father's brief at 17-21).

As previously noted, our review of the record reflects that Father has not had a visit with Child since October 2017. (**See** N.T. Hearing, 2/05/19, at 26, 65, 122). Since that time, Father did not send letters seeking a visit nor did he inquire as to Child's health, performance in school or general well-being. (**See id.** at 26-27).[4] Father was incarcerated from March 2018 through the end of August 2018, and he then spent three weeks in an inpatient alcohol rehabilitation facility in December of that year. (**See id.** at 104-05, 109-10). At the time of the hearing, Father was unemployed and had no home of his own; he lived at a vocational rehabilitation facility. (**See id.** at 61, 110, 135). The testimony showed that Father's financial support of Child was sporadic at best, and although his efforts to address his addiction and mental health issues was a positive start, more rehabilitation is needed. (**See id.** at 28-29, 43, 108-114).

After weighing the testimony, the orphans' court determined that Father failed to maintain contact with Child for more than a year before Mother filed her petition to terminate his parental rights, and that Father's explanations for his inaction were unpersuasive. We discern no abuse of discretion in its

_____

[4] The court specifically credited Mother's testimony that Father did not request to visit with Child and that he did not send letters or serve her with documents requesting any visitation; the court found Father's testimony to the contrary not credible. (**See** Trial Ct. Op., at 14, n. 14).

decision to terminate Father's parental rights to Child pursuant to Section 2511(a)(1).

**B.**

We next address Father's challenge to the orphans' court's subsection 2511(b) analysis. If the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The needs and welfare of the child include intangibles such as love, comfort, security and stability. *See In re Adoption of K.M.G.*, *supra* at *8. A determination regarding the child's needs and welfare requires consideration of the emotional bonds between the parent and child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). "The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *In re D.L.B.*, 166 A.3d 322, 328 (Pa. Super. 2017) (citation omitted).

With regard to subsection (b), Father argues that the orphans' court discounted the bond Child has with him, paternal grandmother and Child's half-brother,[5] and that termination will deprive Child of loving relationships with family members. (*See* Father's Brief, at 5, 15, 25-26).

Again, the record supports the orphans' court's determination. While the court recognized that Father loves Child, it noted that Father has an older

_____

[5] Father has an older son by a different mother, who was 16 years old at the time of the hearing.

son, and that he failed to stabilize his life for that son. (**See** N.T. Hearing, 3/29/19, at 8-9). It further determined that termination would provide consistency for Child and "give [him] the best shot in life where he is not derailed or harmed or has psychological pressure of what is going to happen, the uncertainty or the stress of what [Father] is going to do. . . . He ought to be able to move forward with some sense of permanence, some sense of direction." (**Id.** at 9). Child has a significant bond with Stepfather, whom he refers to as "Dad." (N.T. *in camera* Interview of B.I.S., 2/06/19, at 5, 7, 18, 21).

After review of the record, we agree with the orphans' court's conclusion that Child will not suffer a detriment as a result of the termination of Father's parental rights. The parental bond between Child and Stepfather is strong and loving and his needs and welfare can best be met by terminating the parental rights of Father.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2019

- 10 -